Courtney BROCK, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–08–00509–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 21, 2009.

Rehearing Overruled July 9, 2009.

George W. Lang II, State Counsel for Offenders, Huntsville, TX, for appellant.

Jeri Yenne, Criminal District Attorney, Terri T. Holder, Assistant District Attorney, Angleton, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HANKS.

## OPINION

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Courtney Brock, of assault on a public servant, TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon Supp.2008), and assessed punishment at 50 years' confinement, to run after appellant's existing sentences, and a $1,000 fine. In a single issue on appeal, appellant contends that there was evidence at trial that he was guilty only of the lesser-included offense of misdemeanor assault, and therefore, that the trial court erred by refusing to include appellant's requested instruction on the lesser-included offense in the jury charge. We reverse and remand.

### Background Facts and Procedural History

The offense occurred at the Darrington Unit of the Texas Department of Criminal Justice (TDCJ), where appellant was serving a 20–year sentence for aggravated robbery and a 10–year sentence for felon in possession of firearm. Complainant, Lieutenant H. DelaRosa, was then in his 25th year of service with TDCJ and his 19th year as a lieutenant. DelaRosa's chief responsibility was to manage the Darrington Unit's building schedule by assigning officers to cover the movement of the inmates for their daily activities. These daily activities included meals, recreation, showers, and shake downs. In times of high peak traffic, DelaRosa works these shifts with other officers.

DelaRosa was in his tenth year of service at the Darrington unit on August 30,

2005, the date of the offense. He and another correctional officer, A. Thompson, were supervising a group of "close custody" inmates, including appellant, who were being transferred to and from their cells to the shower area in the main building. The record shows that "close custody" inmates require supervised escort to, from, and during showers. Close custody inmates are not permitted to mix with the general prison population, and prison officials use a "lock and close off" procedure for corridors that close custody inmates use to travel from one area of the prison to another. DelaRosa estimated the group that day at between 20 to 25 inmates, but Officer Thompson and other witnesses estimated the number of inmates in the group as between 30 and 40.

DelaRosa testified that appellant stepped out of line while waiting in line for towels before his shower and approached DelaRosa about a radio that had been removed from appellant's cell a day or two earlier after a shake down in his unit. DelaRosa maintained that he spoke with appellant briefly, only once, and told him that he would investigate, whereupon appellant returned to the line of inmates awaiting showers. After about 20 minutes, the inmates had taken their showers and were again in a line, to be escorted from the shower area through the prison to return to their cells.

The inmates had progressed from the shower area and were approaching a hallway leading to a locked corridor when the confrontation between appellant and DelaRosa occurred.[1] DelaRosa was standing in the officers' area in the middle of the hallway, and was near the front of the line of prisoners and close to a previously locked doorway that led to another corridor ahead. The doorway to the corridor was on DelaRosa's right, and another officer, K. Martinez, had unlocked the door and was standing in the corridor and holding open its door. DelaRosa was coordinating smooth traverse of the entryway by the inmates, by permitting just a few to pass through the doorway at a time, when appellant broke from the line, approached "from behind," on DelaRosa's "blind side" and hit DelaRosa on the left side of his face. Appellant had to have stepped out of line in order to approach DelaRosa from that angle.

Thompson confirmed that he saw appellant strike DelaRosa at least twice. Thompson rushed from the rear of the line to assist as soon as he saw appellant strike DelaRosa. Officer Martinez, the correctional officer who was coordinating traverse of the corridor entry with DelaRosa, also testified that the altercation started when appellant struck DelaRosa. Officer Thompson did not see DelaRosa hit appellant in the face at any time.

DelaRosa's head jerked to the right from the impact of appellant's punch, and his vision became blurred. He was hit in the face an additional two times and stumbled backwards, but bars in the hallway broke his fall. DelaRosa knew he was hit a second time, but did not know by whom at first, though he saw appellant's face for a split second. When DelaRosa's vision cleared, he saw that Officer Thompson had wrestled appellant to the floor by then and was struggling to pin appellant's arms in order to handcuff him. DelaRosa rushed to join the struggle to restrain appellant's right hand. DelaRosa grasped appellant's hand once, but when appellant managed to

---

1. Prison procedures required that inmates proceed in line and follow lines painted on the floors. In hallways, the lines are between the middle of the hallway and the wall. Inmates are not permitted to walk in the middle area, which is reserved for supervising officers.

free his hand from DelaRosa's grip, appellant tried to hit DelaRosa again, whereupon DelaRosa struck appellant in the face. Thompson managed to handcuff appellant, who was escorted to the infirmary and treated for minor cuts and bruises. Lieutenant DelaRosa was treated for neck injuries and was out of work for three months.

Officer Thompson testified that appellant was close to the rear of the line of inmates coming from the showers and that appellant had broken away from the line to run toward Lieutenant DelaRosa. But, inmates B. Morgan and M. Victor placed both Thompson and appellant closer to the front of the line and near DelaRosa when the altercation happened. Morgan testified he was at the front of the line and just behind appellant and that appellant did not step out of line. Morgan denied that he had actually seen DelaRosa strike appellant, but Morgan was "certain" that DelaRosa had taken a swing at appellant as appellant filed past DelaRosa in the line. Morgan also stated that appellant responded by striking DelaRosa, that there were no conversations between appellant and DelaRosa before DelaRosa struck appellant, and that appellant had not been acting aggressively toward DelaRosa.

Inmate Victor was at the opposite end of the line from the doorway, but was "positive" that DelaRosa had hit appellant before appellant struck DelaRosa. According to Victor, he first heard arguments between appellant and DelaRosa, then heard DelaRosa tell appellant to "get out of [his] face," then heard more arguing, and then saw DelaRosa hit appellant. Victor heard appellant and DelaRosa arguing earlier about the radio, but stated that appellant was not acting aggressively to DelaRosa at that time. Both Morgan and

Victor stated that DelaRosa kicked appellant while Thompson wrestled and struggled on the floor to handcuff appellant.

In his testimony, appellant claimed that he had three separate conversations with DelaRosa, rather than the single one DelaRosa described, and that the DelaRosa did not arrive at the scene until after appellant had showered. Appellant deliberately took a short shower so that he could speak to DelaRosa about his radio. When appellant approached, DelaRosa told him to "get out of [his] face" and ordered appellant back in line. Appellant claimed that he left the line two more times to approach DelaRosa about the missing radio while waiting in line to return to his cell. By that time, both he and DelaRosa were angry, but appellant insisted that he struck DelaRosa because DelaRosa had struck him first.

Under cross-examination, appellant acknowledged that he did not claim until trial that DelaRosa was the aggressor and did not make that claim at his disciplinary hearing. Both the officer to whom appellant made his statement and the counsel substitute [2] at the Darrington unit confirmed that appellant did not claim earlier that DelaRosa had hit him first. However, a partial videotape of the incident recorded by Officer A. Green shows that appellant was asserting that DelaRosa hit him first as appellant was being escorted from the area to the infirmary.

DelaRosa's and Thompson's physical contact with appellant in response to his resistance constituted a use of major force under TDCJ policy, as opposed to minor force and deadly force. Because the incident involved use of major force, Officer Grant was immediately summoned to the

---

**2.** The record reflects that the counsel substitute is an employee who represents the inter-est of an accused in prison.

scene once the fracas began to document as much of the incident as possible by videotape, as required by TDCJ policy. Though the videotape did not capture the initial altercation, the videotape recorded by Officer A. Green shows appellant claiming that DelaRosa hit him first as appellant was being escorted from the area to the infirmary. The videotape was played for the jury at trial. Officer Grant confirmed that appellant never made a formal use-of-force statement. Officer E. Rocha, to whom appellant later gave a statement of the incident, also testified that appellant did not claim that Lieutenant DelaRosa had hit him first.

At the close of the evidence, the trial court denied appellant's request to include the lesser offense of misdemeanor assault in the jury instructions. In addition, the trial court denied appellant's dictated, requested instruction on lesser-included offense and his written, requested instruction.

### Lesser–Included Offense

■ We review the trial court's decision regarding including a lesser-included offense in the jury charge for abuse of discretion. *See Dobbins v. State,* 228 S.W.3d 761, 768 (Tex.App.-Houston [14th Dist.] 2007, pet. dism'd) (citing *Jackson v. State,* 160 S.W.3d 568, 572 (Tex.Crim.App.2005)). The two-pronged *Aguilar–Rousseau* test determines whether a defendant is entitled to a lesser-included offense instruction in the jury charge. *R. Hall v. State,* 158 S.W.3d 470, 473 (Tex.Crim.App.2005) (referring to *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985) and *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex. Crim.App.1993)). This test requires: (1) that the lesser offense must actually be a lesser-included offense of the charged offense, as defined by article 37.09 of the Code of Criminal Procedure and (2) that the record must contain some evidence

that permits a rational jury to find that the defendant is guilty only of the lesser-included offense. *R. Hall,* 158 S.W.3d at 473; *see A. Hall v. State,* 225 S.W.3d 524, 535 (Tex.Crim.App.2007).

■ As applied to the offenses of assault on a public servant and misdemeanor assault, the *Aguilar–Rousseau* test requires that "there must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *R. Hall,* 158 S.W.3d at 473. Thus, the evidence must demonstrate that the lesser-included offense is a "valid, rational alternative to the charged offense." *A. Hall,* 225 S.W.3d at 536; *Feldman v. State,* 71 S.W.3d 738, 750–51 (Tex.Crim.App.2002). In determining whether the instruction on lesser-included offense is appropriate, the court "evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence." *R. Hall,* 158 S.W.3d at 473. "Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *A. Hall,* 225 S.W.3d at 536. When a trial court improperly refuses a properly requested instruction on a lesser-included offense, such that the jury's only option is to convict or acquit on the main charge, a finding of harm is automatic, *Robalin v. State,* 224 S.W.3d 470, 477 (Tex.App.-Houston [1st Dist.] 2007, no pet.), because the jury was denied the opportunity to convict the defendant of the lesser offense. *Ray v. State,* 106 S.W.3d 299, 303 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Saunders v. State,* 913 S.W.2d 564, 571 (Tex.Crim.App. 1995)).

### A. Elements of Assault and Assault on a Public Servant

A person commits assault if he intentionally, knowingly, or recklessly causes

bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp.2008). The offense becomes assault on a public servant and is a felony of the third degree if, in addition, it is committed, as alleged in the indictment in this case, against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon Supp.2008). The actor is presumed to have known the person assaulted was a public servant if, as here, the person assaulted was wearing a distinctive uniform or badge indicating employment as a public servant. TEX. PENAL CODE ANN. § 22.01(d).

### B. Application of the *Aguilar–Rousseau* Test

#### 1. Code of Criminal Procedure Article 37.09 and Penal Code Section 22.01(b)(1)

Under the first element of the *Aguilar–Rousseau* test, the lesser offense must actually be a lesser-included offense of the charged offense, as defined by Article 37.09 of the Code of Criminal Procedure. *R. Hall*, 158 S.W.3d at 473. The court decides this element as a matter of law in advance of trial, without considering any of the evidence submitted at trial. *See A. Hall*, 225 S.W.3d at 535 (adopting "pleadings approach" as "sole test" for determining first element of *Aguilar–Rousseau* test). Article 37.09 states that an offense is a lesser-included offense if any of the following circumstances exist:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09(1)-(4) (Vernon Supp.2008).

The indictment tracked Article 37.09(1) of the Code of Criminal Procedure and section 22.01(b)(1) of the Penal Code by charging that, on or about August 30, 2005, appellant

[D]id then and there intentionally, knowingly, or recklessly cause bodily injury to Hector DelaRosa by striking [him] with [appellant's] hand, and [appellant] did then and there know that ... DelaRosa was then are there a public servant, to-wit: a correctional officer and that the said public servant was then and there lawfully discharging an official duty.

As in *R. Hall*, the charged offense of assault on a public servant in this case required the State to prove the elements of misdemeanor assault, pursuant to section 22.01(a) of the Penal Code, and also the following elements:

1) the person assaulted was a public servant;

2) the actor knew that the person he assaulted was a public servant;

3) the person assaulted was discharging official duties at the time of the assault; and

4) the person assaulted was lawfully discharging official duties.

*R. Hall*, 158 S.W.3d at 473; *see* TEX. PENAL CODE ANN. § 22.01(a), (b)(1) (Vernon Supp. 2008).

■ As alleged by the State in the indictment, appellant met the first prong of

the *Aguilar–Rousseau* test as a matter of law because "the offense of assault of a public assault differs from misdemeanor assault only because it requires proof of additional facts." *See A. Hall,* 225 S.W.3d at 535–36; *R. Hall,* 158 S.W.3d at 473; *see* TEX.CODE CRIM. PROC. ANN. art. 37.09(1). Accordingly, assault is a lesser-included offense of assault on a public servant. *See A. Hall,* 225 S.W.3d at 535–36; *R. Hall,* 158 S.W.3d at 473.

### 2. *Was There Evidence that Appellant Was Guilty Only of Assault?*

■■ To be entitled to a jury instruction on the lesser-included offense of misdemeanor assault under the second element of the *Aguilar–Rousseau* test, the record must contain some "affirmative evidence ... that negates one of the four additional elements of assault on a public servant, yet admits the underlying assault." *R. Hall,* 158 S.W.3d at 474. This inquiry demands that the court "evaluate[ ] the evidence in the context of the entire record," without considering whether "the evidence is credible, controverted, or in conflict with other evidence." *Id.* at 473; *see also A. Hall,* 225 S.W.3d at 536 (stating that anything more than a scintilla may suffice to entitle a defendant to a lesser charge); *McKinney v. State,* 207 S.W.3d 366, 370 (Tex.Crim.App.2006) ("If ... facts are elicited during trial that raise an issue of the lesser-included offense, and the charge is properly requested, then a charge must be given.").

In addition, any consideration of the lawfulness of a correction officer's discharge of his duties must also consider section 9.53 of the Penal Code, the terms of which exclude criminal responsibility of officers who maintain security in the specialized circumstances of a correction facility. *See R. Hall,* 158 S.W.3d at 475. Section 9.53 is part of Title 2 of the Penal Code, which states "General Principles of Criminal Responsibility," and also part of chapter 9 of Title 2, which provides for "Justification Excluding Criminal Responsibility," and subchapter E, which applies to "Law Enforcement." *See* TEX. PENAL CODE ANN. §§ 9.51–.53 (Vernon 2003).

■ Section 9.53 addresses "Maintaining Security in Correctional Facility" and states,

An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

TEX. PENAL CODE ANN. § 9.53 (Vernon 2003). Section 9.53 thus provides that the test to determine lawful discharge of a correctional officer's duties is whether the officer's "use of force falls within [section 9.53]." *R. Hall,* 158 S.W.3d at 475 (citing TEX. PENAL CODE ANN. § 9.53). If the use of force meets the section 9.53 test, (1) the officer "is lawfully discharging his official duties" and (2) "if assaulted at this time, the actor is guilty of assault on a public servant rather than mere misdemeanor assault." *Id.* For a defendant-actor to be entitled to an instruction on the lesser-included offense of misdemeanor assault, "there must be some evidence, from any source," showing that the officer "was criminally or tortiously abusing his status as a public servant at the time of the assault." *Id.*

Like the appellant in *R. Hall,* appellant contends that the record in this case reveals affirmative evidence that negates the "lawful discharge" element of the offense of assault on a public servant. *See id.* at 474. Appellant relies on his own testimo-

ny and the testimony of inmates Morgan and Victor. Appellant and Victor stated that DelaRosa swung at appellant as he filed past DelaRosa, and Morgan, who stated he was directly behind appellant, was "certain" that DelaRosa hit appellant and that appellant struck back. Morgan and Victor also stated that appellant had not behaved aggressively toward DelaRosa and Morgan denied any verbal exchange between the two men before DelaRosa struck appellant, though Victor, who was further away from the men, described an angry exchange of words before DelaRosa struck appellant. Morgan, however, further denied that appellant had stepped out of line. Appellant contends this evidence is some evidence from which a rational jury could conclude that DelaRosa was not "lawfully discharging an official duty" as a public servant when he struck appellant, *see id.* at 475–76, and, therefore, some evidence that appellant was guilty only of the lesser offense, specifically, misdemeanor assault. We agree.

In *R. Hall,* the defendant and his cellmate were in the corridor outside their cell when the defendant approached a correctional officer about a complaint. *Id.* at 475. When their discussion became heated, and the officer's verbal command to "move on" failed, the officer pushed or shoved the defendant toward his cell. *Id.* Because the defendant's lack of compliance with the verbal command to "move on" created a danger to the officer's safety and the safety of others—a danger that actually materialized—the officer's push or shove was "well within the scope of his lawful duties" *See id.*

There was no evidence in *R. Hall* that the officer "unjustifiably or maliciously hauled off and pushed or punched a quietly passing inmate who was minding his own business." *See id.* at 476. Rather, the refusal of the angry defendant in *R. Hall*

to comply with the officer's legitimate order to "move on" into his cell created a danger to the security and safety of both prisoners and staff that officer sought to curb when he pushed or shoved the defendant to his cell. *Id.* The evidence in *R. Hall* showed that the defendant instigated the confrontation and then refused to obey a legitimate order by the correctional officer. *Id.* Accordingly, there was no evidence to support a rational conclusion that the officer was not lawfully discharging his official duties when the defendant retaliated by punching the officer and, therefore, no evidence that entitled the defendant to an instruction on the lesser-included offense of assault. *Id.*

In contrast to the lack of evidence that the correctional officer struck the defendant unjustifiably or maliciously in *R. Hall, see id.,* appellant and inmates Morgan and Victor all described an unprovoked attack on appellant, to which he responded by striking DelaRosa. Their story necessarily conflicts with DelaRosa's testimony that he was blind-sided when appellant struck him and the testimony of Officers Thompson and Martinez that appellant attacked DelaRosa. But resolving that conflict is properly for the fact-finder and therefore does not affect our analysis. *See R. Hall,* 158 S.W.3d at 473–74; *McKinney,* 207 S.W.3d at 370.

Having evaluated the entire record, *see R. Hall,* 158 S.W.3d at 473, we hold that there is some evidence from which a rational jury could find that Lieutenant DelaRosa may have either criminally or tortiously abused his status as a public servant by acting outside of his lawful discharge of his duties, as defined by Penal Code section 9.53, when he allegedly assaulted appellant. *See id.* at 475. Accordingly, appellant has satisfied the second element of the *Aguilar–Rousseau* test, and the trial court erred by denying

appellant's properly requested instruction on the lesser-included offense of misdemeanor assault.

We sustain appellant's issue.

## Conclusion

We reverse the judgment of the trial court and remand for a new trial.