



# MEMORANDUM OPINION

No. 04-09-00225-CR

Robert Vernon **HUDLEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 08-07-00082-CRK
Honorable Ron Carr, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: February 3, 2010

AFFIRMED

A jury convicted appellant, Robert Vernon Hudley, of assault on a public servant. In a single issue on appeal, Hudley contends there was evidence at trial that he was guilty only of the lesser-included offense of assault, and therefore, the trial court erred by refusing to include his requested instruction on the lesser-included offense in the jury charge. We affirm the judgment of the trial court.

## BACKGROUND

Sergeant James Tanner, a correctional officer employed by the Texas Department of Criminal Justice (TDCJ) at the Connally Unit, testified that on the morning of January 14, 2008, he was in uniform and performing his duty of bringing Section 2 inmates off the recreation yard and back into their cells. He noticed Hudley, a Section 3 inmate, attempt to enter with the Section 2 inmates. Tanner testified that Hudley was "out of place," and let Hudley know that he would either send Hudley back to the recreation yard to wait with the other Section 3 inmates, or write Hudley a disciplinary report for being out of place. Tanner then asked Hudley for his identification. Hudley refused to present his identification, which Tanner saw was in his right hand. Tanner held out his hand as if to say, "give it to me," and Hudley pushed his hand away and struck Tanner on the right side of the face. Tanner attempted to place Hudley against the wall. Hudley hit Tanner a few more times and Tanner struck Hudley three times with a closed fist in an attempt to defend himself. Correctional Officer Raul Guerra then sprayed both men with tear gas and broke up the fight. Guerra testified that he witnessed Hudley slap Tanner's arm away and then punch Tanner in the face. The only thing Guerra heard was Tanner requesting Hudley's identification. Further testimony evidenced that all inmates have identification cards which they are required to carry with them whenever they are outside their cells. TDCJ staff can demand an inmate's identification at any time and inmates can be disciplined for refusing to present their identification cards.

Several inmates observed the altercation and testified on Hudley's behalf. The first four inmates could not hear the words, if any, exchanged between Tanner and Hudley because they were in their cells at the time the fight occurred. Carry Tucker stated that he witnessed Tanner grab Hudley and then swing at him as he attempted to pull away. Tucker was sure Tanner swung at

Hudley first. Robert Jackson testified that he saw Tanner reach for Hudley in an aggressive manner and swing at him. Hudley then swung back and the two men fought until sprayed by Guerra. Gary King stated that he witnessed Tanner grab for Hudley; when Hudley pulled back, Tanner swung at him. Hudley and Tanner fought until Guerra sprayed them. Raul Reyes testified in a manner similar to the other inmates. Jimmy Green was the only inmate to hear what occurred during the altercation. He was with Hudley when they attempted to enter with the Section 2 inmates. He stated that Tanner demanded Hudley's identification and Hudley refused. At that time, Tanner reached to grab Hudley and hit Hudley in the face. Green admitted that he and Hudley were out of place.

After both sides rested and closed, the trial court presented its proposed charge, which included an instruction on self-defense. Hudley reiterated his objections to the court's denial of his request for an instruction on the lesser-included offense of assault and the definition of "lawfully discharging an official duty." The court overruled the objections. The jury convicted Hudley of assault on a public servant. Hudley timely appealed.

STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision regarding inclusion of a lesser-included offense in the jury charge for abuse of discretion. *Brock v. State*, 295 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Jackson v. State*, 160 S.W.3d 568, 572 (Tex. Crim. App. 2005). The Court of Criminal Appeals has articulated the two-prong *Aguilar/Rousseau* test to determine whether a defendant is entitled to a lesser-included offense instruction in the jury charge. *R. Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005) (citing *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) and *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). This test requires (1) that the lesser offense must actually be a lesser-included offense of the charged offense,

as defined by article 37.09 of the Code of Criminal Procedure, and (2) that the record must contain some evidence that permits a rational jury to find that the defendant is guilty only of the lesser-included offense. *Id.*; *A. Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007).

Applying the *Aguilar/Rousseau* test to the offenses of assault on a public servant and misdemeanor assault, the test requires that "there must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *R. Hall*, 158 S.W.3d at 473. The evidence must demonstrate that the lesser-included offense is a "valid, rational alternative to the charged offense." *A. Hall*, 225 S.W.3d at 536. In determining whether the instruction on the lesser-included offense is appropriate, the reviewing court "evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence." *R. Hall*, 158 S.W.3d at 473. "Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *A. Hall*, 225 S.W.3d at 536. When a trial court erroneously refuses a properly requested instruction on a lesser-included offense, such that the jury's only option is to convict or acquit on the main charge, a finding of harm is automatic, *Robalin v. State*, 224 S.W.3d 470, 477 (Tex. App.—Houston [1st Dist.] 2007, no pet.), because the jury was denied the opportunity to convict the defendant of the lesser offense. *Brock*, 295 S.W.3d at 49; *see Ray v. State*, 106 S.W.3d 299, 303 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995)).

## DISCUSSION

The parties agree that assault is a lesser-included offense of assault on a public servant. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp. 2009).[1] Thus, the first prong of the *Aguilar/Rousseau* test is met as a matter of law. *See R. Hall*, 158 S.W.3d at 473. We next determine whether there was some evidence presented at trial from which a rational jury could find that Hudley was guilty *only* of assault, not assault on a public servant. To be entitled to a jury instruction on the lesser-included offense of misdemeanor assault, the record must contain some "affirmative evidence . . . that negates one of the four additional elements of assault on a public servant, yet admits the underlying assault." *Id.* at 474. We evaluate the entire record without considering whether "the evidence is credible, controverted, or in conflict with other evidence." *Id.* at 473; *see A. Hall*, 225 S.W.3d at 536 (stating that anything more than a scintilla may suffice to entitle a defendant to a lesser charge); *see also McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006) ("If . . . facts are elicited during trial that raise an issue of the lesser-included offense, and the charge is properly requested, then a charge must be given.").

Hudley claims that he presented evidence affirmatively negating the last element of assault on a public servant—that Sergeant Tanner was "lawfully" discharging an official duty at the time of the assault. *See* TEX. PENAL CODE ANN. § 22.01(b)(1). Specifically, Hudley asserts he offered some evidence that Tanner acted unlawfully by striking Hudley first without provocation, and Tanner

---

[1] A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2009). Such an offense is a Class A misdemeanor. *Id.* at § 22.01(b) (Vernon Supp. 2009). The offense becomes assault on a public servant and is a felony of the third degree if, in addition, it is committed, as alleged in the indictment in this case, against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* at § 22.01(b)(1). The actor is presumed to have known the person assaulted was a public servant if, as here, the person assaulted was wearing a distinctive uniform or badge indicating employment as a public servant. *Id.* at § 22.01(d) (Vernon Supp. 2009).

therefore acted outside the lawful performance of his official duties. To determine whether a correctional officer was lawfully discharging his official duties, we look to section 9.53 of the Penal Code, which provides that a correctional officer is justified in using reasonable force against an inmate to maintain the officer's own safety, the safety of others, or the security of the prison as a whole. TEX. PENAL CODE ANN. § 9.53 (Vernon 2003).[2] Accordingly, if a correctional officer's use of force falls within these parameters, he is lawfully discharging his official duties, and an inmate who assaults the officer at this time is guilty of assault on a public servant rather than mere misdemeanor assault. *R. Hall*, 158 S.W.3d at 474. To be entitled to a lesser-included instruction on misdemeanor assault, there must be some evidence in the record, from any source, that would show that the officer was criminally or tortiously abusing his status as a public servant by using unjustified force or engaging in official oppression or civil rights violations at the time of the assault. *Id.* at 474-75.

Here, Hudley relies on the testimony of inmates Tucker, Jackson, King, Reyes, and Green, who all stated that Tanner struck Hudley first without provocation. Only Green heard the words exchanged between Hudley and Officer Tanner; Green stated that he and Hudley were "out of place," Tanner ordered Hudley to present his identification, and Hudley refused before Tanner struck Hudley. Taking such testimony by the defense witnesses at face value, there is still no evidence that a command was *not* given by Officer Tanner and refused by Hudley before Hudley was struck. As noted, *supra*, there are instances where a correctional officer is justified in using reasonable force

---

[2] "An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security." TEX. PENAL CODE ANN. § 9.53 (Vernon 2003). The trial court appropriately included a jury instruction on section 9.53.

to maintain security as part of the lawful discharge of his official duties. *See* TEX. PENAL CODE ANN. § 9.53; *see also R. Hall*, 158 S.W.3d at 475-76 (inmate's refusal to obey legitimate order by officer justified officer's pushing of inmate to maintain his own and others' safety, and therefore officer was acting within scope of his lawful duties). Here, there is no dispute that the location of the assault was a prison, and Officer Tanner was in uniform, on duty, and engaged in moving inmates inside from the recreation yard. Moreover, there is evidence that Hudley was "out of place" and Tanner gave Hudley a command to present his identification, which Hudley refused to obey, before any physical contact occurred. On this record, there is no evidence that Sergeant Tanner criminally or tortiously abused his status as a public servant by using unjustified force at the time of the physical altercation, and therefore he was lawfully discharging his official duties. Accordingly, there is no evidence that Hudley was *only* guilty of the lesser-included offense of assault. Therefore, the second prong of the *Aguilar/Rousseau* test was not satisfied, and Hudley was not entitled to a lesser-included offense instruction. *A. Hall*, 225 S.W.3d at 535. The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice

DO NOT PUBLISH