

# NUMBER 13-16-00220-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JEREMY JAY CUEVAS,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 156th District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Hinojosa
### Memorandum Opinion by Justice Hinojosa

Appellant Jeremy Jay Cuevas appeals his conviction for assault of a public servant, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (West, Westlaw through 2017 1st C.S.). A jury found appellant guilty, assessed punishment of seven years' imprisonment in the Texas Department of Criminal Justice-Institutional Division,

and recommended community supervision. The trial court suspended imposition of the sentence and placed appellant on community supervision for a period of seven years. By two issues,[1] appellant argues: (1) the evidence is legally insufficient to support his conviction; and (2) he suffered egregious harm from an erroneous jury charge. We conclude that there is legally insufficient evidence that the complainant was discharging his official duties as a public servant when the assault occurred. Therefore, we reverse and remand to the trial court to reform the judgment to reflect a conviction for assault causing bodily injury and to conduct a new punishment hearing.

## I.    BACKGROUND[2]

Appellant was charged by indictment for assaulting Clifford Bagwell, a Bee County Constable, while Bagwell was discharging an official duty. *See id.* The alleged assault took place while appellant was attending a wedding reception at the Grand Dance Hall (the Grand) in Bee County, Texas. At the time, Bagwell was moonlighting in a security capacity for the Grand, along with his twin brother Clinton.[3] The indictment alleged that at the time of the assault, Bagwell was lawfully discharging an official duty by "keeping [appellant] from entering [the Grand] at the request of [the Grand's] employee, and while trying to keep the peace."

Clinton testified that his duties at the Grand included carrying beer to the bar, cleaning up, and taking care of "the house rules." Clinton explained that the Grand

---

[1] The State did not file a responsive brief.

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[3] As Clinton and Clifford are brothers, we will refer to Clinton by his first name to avoid confusion.

prohibits its patrons from taking alcohol outside the premises to protect its beer and liquor licenses. On the night in question, a Grand employee notified Clinton that appellant went outside with a beer. Clinton informed appellant he could not have alcohol outside the dance hall and requested that appellant return inside. Appellant, who appeared to be intoxicated, responded with vulgarities and refused to comply. Clinton then asked another patron to talk to appellant so that "we could take care of the problem without any other trouble." Appellant subsequently reentered the Grand.

Clinton testified that he later confronted appellant a second time for bringing alcohol outside the licensed premises. Appellant complied with Clinton's request to return inside, but shortly thereafter appellant again went outside with alcohol. Clinton then sought assistance from Bagwell and the two approached appellant. Clinton reminded appellant of the two previous warnings and informed him, "because you have done it before, we're not going to let you back inside." Appellant indicated his disagreement and attempted to push through Clinton and Bagwell. Clinton stated that he and his brother responded by pushing appellant against a nearby vehicle and holding him there. During the struggle, another patron hit Clinton on the back of his head. While he was defending himself, Clinton saw appellant jump on Bagwell and take him to the ground. He also observed appellant striking Bagwell with his fists. Shortly thereafter, someone pulled appellant away and removed him from the area.

Bagwell testified that he was working security for the Grand that evening and was attired in a constable uniform. He recalled Clinton informing him that there was a patron outside with a beer and they were to deny him re-entry. Bagwell approached appellant

3

with Clinton. He then took appellant's beer and poured it out. Bagwell told appellant he could not reenter, and appellant responded by pushing his way through Bagwell and Clinton. The two brothers then pushed appellant up against a nearby vehicle. At that point, Bagwell saw another person, later identified as appellant's brother Greg Cuevas, fighting with Clinton. Greg "took a swing" at Bagwell, who responded in kind. According to Bagwell, appellant then jumped on him and began striking him while driving him to the ground. During the fall, Bagwell hit his head on a nearby building. He experienced soreness in his shoulder and back for some time afterward. Bagwell was able to regain his footing and observed that other patrons were removing appellant from the scene.

Bagwell testified that he called the Bee County Sheriff's Department and "advised them of a 10-10, which is a fight at The Grand; officer involved." A sheriff's deputy arrived shortly and arrested appellant. When asked by the State whether he was trying to "keep the peace out there when you were dealing with [appellant,]" Bagwell responded, "trying to keep the peace and keep the rules of the establishment intact." On cross-examination, Bagwell agreed that criminal trespass did not "come into play" regarding his encounter with appellant.

Jason Cuevas, appellant's brother, testified that he saw appellant arguing with Bagwell. He stated that during the argument, "almost the entire Grand, from what it felt like, came out those side doors and caused a big ole [sic] bum-rush of people." Jason continued, "When the people came out, the door was shoved open, and it hit [Bagwell] in the back, and up against the building is where he fell." Two other patrons testified regarding their observations, but neither was present at the time of the alleged assault.

4

Appellant called Ryan Trevino, a Bee County sheriff's deputy, as a witness. Officer Trevino, who responded to the scene that night, testified that multiple unidentified witnesses claimed that Clinton was the initial aggressor.

The jury returned a guilty verdict. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant argues the evidence is legally insufficient to support a conviction for assault of a public servant.

### A. Standard of Review and Applicable Law

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989) (en banc).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773

5

(Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.   *Id.*   Assault of a public servant requires proof of misdemeanor assault plus proof of four additional elements:   (1) the person assaulted was a public servant; (2) the actor knew that the person he assaulted was a public servant; (3) the person assaulted was discharging official duties at the time of the assault; and (4) the official duties were being lawfully discharged.   *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005) (citing TEX. PENAL CODE ANN. § 22.01(b)(1)).

## B.    Analysis

Appellant argues that there was legally insufficient evidence establishing that Bagwell was discharging an official duty at the time of the assault.   Appellant maintains that Bagwell's private security guard duty does not constitute the discharge of "peace officer duties."   We agree.

Bagwell was working in an off-duty capacity at the time of his assault, but this fact is not dispositive.   "[C]onstables and their deputies, are statutorily designated as peace officers under article 2.12 of the Code of Criminal Procedure."   *Arrington v. Cnty of Dallas*, 792 S.W.2d 468, 470 (Tex. App.—Dallas 1990, writ denied) (citing TEX. CODE CRIM. PROC. ANN. art. 2.12(2) (West, Westlaw through 2017 1st C.S.)).   As peace officers, constables are empowered to preserve the peace within their jurisdiction, execute lawful process, give notice of all offenses committed within their jurisdiction, and

6

arrest offenders, without a warrant, where authorized by law. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 2.13 (West, Westlaw through 2017 1st C.S.)).

It is well-settled that a peace officer "is for many reasons on duty 24 hours a day." *Moore v. State*, 562 S.W.2d 484, 486 (Tex. Crim. App. [Panel Op.] 1978). "A police officer's 'off-duty' status is not a limitation upon the discharge of police authority" in the presence of criminal activity. *Id.* (citing *Wood v. State*, 486 S.W.2d 771, 774 (Tex. Crim. App. 1972)). As such, it is entirely possible that an off-duty peace officer is faced with a situation requiring the exercise of his lawful authority. *See Polk v. State*, 337 S.W.3d 286, 287–88 (Tex. App.—Eastland 2010, pet. ref'd) (holding that a police officer working an off-duty security job was discharging an official duty when he was investigating what he believed to be a possible drug transaction). However, a complainant's status as a peace officer does not abrogate the requirement of the penal code that the officer must be discharging an official duty at the time of the assault. *See Morris v. State*, 523 S.W.2d 417, 418 (Tex. Crim. App. 1975). A police officer is lawfully discharging his duty so long as he is acting within his capacity as a peace officer. *Mays v. State*, 318 S.W.3d 368, 388 (Tex. Crim. App. 2010). This determination depends on the circumstances of the encounter, such as whether the police officer was in uniform, on duty, and on regular patrol at the time of the assault. *Hall*, 158 S.W.3d at 474.

Here, the evidence demonstrates only that Bagwell was acting in a private security capacity. Both Clinton and Bagwell testified that they were denying appellant re-entry to the Grand because he broke the "house rules" by taking alcohol outside of the licensed premises. In describing his role, Bagwell stated, "On all the occasions if there is

somebody that needs to be made aware to leave The Grand because of something wrong, I always make sure [Clinton] knows beforehand, and that way it goes through The Grand." Bagwell emphasized that at the time of the assault he was "trying to keep the peace and keep the rules of the establishment intact." Bagwell specifically disclaimed that he was trying to prevent a criminal trespass when he confronted appellant. Further, there was no evidence that Bagwell was investigating a possible crime, that he was seeking to prevent the commission of a crime, or that he was seeking to arrest appellant for a criminal violation.[4] Indeed, a sheriff's deputy, not Bagwell, arrested appellant. Thus, the evidence establishes only that Bagwell confronted appellant at the request of a Grand employee and that he was denying appellant re-entry in his capacity as a Grand security guard.

We conclude that there is legally insufficient evidence that Bagwell was discharging an official duty at the time of the assault. *See Morris*, 523 S.W.2d at 418 (holding that a police officer was not discharging an official duty when he was assaulted in a parking lot during an argument over damage to a vehicle despite having informed the defendant that he was an officer). Therefore, the evidence is legally insufficient to support appellant's conviction for assault of a public servant. *See Johnson*, 364 S.W.3d at 293–94. We sustain appellant's first issue. As we discuss below in greater detail,

---

[4] Although not referenced by Bagwell, we note that the Grand's rule prohibiting patrons from taking alcohol from the licensed premises is consistent with section 28.10 of the Texas Alcoholic Beverage Code which provides that "[a] mixed beverage permitee may not permit any person to take any alcoholic beverage purchased on the licensed premises from the premises where sold[.]" TEX. ALCO. BEV. CODE ANN. § 28.10(b) (West, Westlaw through 2017 1st C.S.). The Texas Alcoholic Beverage Commission may suspend a permitee's license for a violation of the alcoholic beverage code. *See id.* § 11.61(b)(2) (West, Westlaw through 2017 1st C.S.). However, there is no corresponding provision imposing criminal liability for someone who possesses alcohol outside the premises of a permitee.

8

our resolution of this issue entitles appellant to a new punishment proceeding for the lesser-included offense of assault causing bodily injury, but it does not result in an acquittal or a new guilt-innocence trial. Therefore, we now turn to appellant's complaint that he is entitled to an outright new trial as a result of an erroneous jury charge. *See* TEX. R. APP. P. 47.1.

### III. JURY CHARGE ERROR

By his second issue, appellant argues that the jury charge "instructed the jury that it could convict appellant for assault on a public servant when the alleged victim was only a security guard, not a peace officer." Appellant argues he suffered egregious harm as a result.

### A. Standard of Review and Applicable Law

The trial court must charge the jury on the "law applicable to the case," which includes each element of the offense or offenses charged. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2017 1st C.S.). The trial court's instructions consist of an abstract statement of the law and the application paragraphs. *See Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds*, *Malik*, 953 S.W.2d at 239. "[A]bstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Id.* The application paragraph applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012).

9

In other words, it "specifies the factual circumstances under which the jury should convict or acquit[.]" *Id.*

If we find error in the jury charge, then we consider whether the error was harmful under the appropriate standard. *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Where, as here, appellant did not object to the charge, the error must be fundamental and will not result in reversal unless it was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

**B.     Analysis**

Appellant complains of the following definition included in the abstract portion of the jury charge: "The actor is presumed to have known the person assaulted was a public servant or security officer if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant or status as a security officer." This language is a correct recitation of the statutory presumption language found in section 22.01(d) of the penal code. *See* TEX. PENAL CODE ANN. § 22.01(d). The statute references both "security officer" and "public servant" because they are both classes of victims which may elevate a misdemeanor assault to a third-degree felony. *See id.* §

10

22.01(b)(1), (4).   As noted by appellant, the abstract definition exceeds the indictment's allegation that Bagwell was a public servant.   Nevertheless, an abstract statement of the law that goes beyond the indictment allegations usually will not present reversible error unless "the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph."   *Plata*, 926 S.W.2d at 302–03.   The abstract instruction here was a correct statement of law and the definition was properly limited by the charge's application paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that . . . [appellant] did then and there intentionally, knowingly or recklessly cause bodily injury to [Bagwell] by jumping on him and causing him to fall, and the defendant did then and there know that the said [Bagwell] *was then and there a public servant, to-wit:   a constable and peace officer*, and that the said [Bagwell] was then and there lawfully discharging an official duty, to-wit:   keeping the said defendant from entering The Grand dance hall at the request of The Grand dance hall's employee, and while trying to keep the peace, then you will find [appellant] guilty of the offense of Assault On a Public Servant as alleged in the Indictment.

(Emphasis added.)

"It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction."   *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).   Therefore, "[a]n abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory."   *Id.*; *see Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995).   Accordingly, an abstract definition that goes beyond the indictment's allegations is "effectively restricted by the charge's application of the law to the facts[.]"   *Sandig v. State*, 580 S.W.2d 584, 586 (Tex. Crim. App. 1979).   Here, the application paragraph effectively restricted the jury's consideration to whether Bagwell was a public servant as alleged in the indictment.   Therefore, we conclude that

11

the jury charge was not erroneous. *See Plata*, 926 S.W.2d at 302–03. Having concluded that the trial court did not err, we need not address whether appellant was harmed by the instruction. *See Tottenham*, 285 S.W.3d at 30. We overrule appellant's second issue.

## IV. DISPOSITION

While not raised by appellant, we must address the proper disposition. If an appellate court concludes that the evidence was legally insufficient to support a conviction, we are required to determine whether the judgment should be reformed to reflect a conviction for a lesser-included offense. *See Canida v. State*, 434 S.W.3d 163, 166 (Tex. Crim. App. 2014). Reformation of the judgment is appropriate if we are able to answer "yes" to the following questions:

> 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense?

*Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014). "[I]f the answers to both [questions] are yes, the court is authorized—indeed required—to avoid the 'unjust' result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense." *Id.* (internal footnote omitted). An outright acquittal under these circumstances would be unjust because the result would involve usurping the fact finder's determination of guilt. *Id.* at 298. A court of appeals should limit the use of judgment reformation to those circumstances when the commission of a lesser offense can be established from the facts that the jury actually found. *Id.* at 298–99.

12

To convict appellant of the lesser-included offense of assault causing bodily injury, the State would have been required to prove beyond a reasonable doubt that (1) appellant (2) intentionally, knowingly or recklessly (3) caused bodily injury to the complainant. *See* TEX. PENAL CODE ANN. § 22.01(a). The jury, in the course of finding appellant guilty of assault of a public servant, must have necessarily found every element necessary to convict appellant of assault causing bodily injury. *See Brock v. State*, 295 S.W.3d 45, 51 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (observing that the offense of assault of a public servant differs from misdemeanor assault only because it requires proof of additional facts and concluding that assault is a lesser-included offense of assault of a public servant). Further, having reviewed the evidence presented at trial, we conclude there is legally sufficient evidence to support a conviction for assault causing bodily injury. *See Johnson*, 364 S.W.3d at 293–94. Therefore, the judgment should be reformed to reflect a conviction for assault causing bodily injury. *See Thornton*, 425 S.W.3d at 307.

## V.    CONCLUSION

We reverse the trial court's judgment. We remand the case to the trial court to reform the judgment to reflect a conviction for assault causing bodily injury, a class A misdemeanor, and to conduct a new punishment hearing. *See id.*

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
8th day of March, 2018.