

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00004-CR

---

DYLAN FOREST NEWCOMER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 28,900-C, Honorable Ana Estevez, Presiding

---

April 19, 2021

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Dylan Forest Newcomer, appellant, presents one issue in this appeal from his conviction on two counts of aggravated assault against a public servant with a deadly weapon.[1] We affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B) (West 2019).

Background

Around 3:30 in the morning on August 31, 2018, a burglary alarm was tripped at a bicycle shop near the intersection of Western Street and 34th Avenue in Amarillo. Upon hearing the dispatch, two Amarillo police officers began driving toward the shop. As they approached from the west on 34th Avenue, they encountered a pedestrian who appeared to flag them down. They stopped, and the pedestrian, who later identified himself as appellant, indicated that he had heard the alarm and seen two people on bicycles in the area. With appellant's consent, Officer Chad Sanders searched appellant's backpack, where he found hand tools, gloves, and other items. His suspicions aroused, Officer Sanders ran a warrants check on his in-car computer while Officer Morgan Powell stood near appellant. Officer Sanders discovered that appellant had an active warrant for his arrest for a parole violation. He exited his patrol car and walked toward appellant, telling him to place his hands behind his back. Appellant "instantly took off running" away from the police officers.

The officers pursued appellant into the front yard of a nearby residence. Officer Sanders deployed his taser, but it was ineffective. The chase continued around a corner until appellant stopped near a tall picket fence. Then, Officer Sanders testified, appellant spun around and a shot rang out. Officer Sanders saw the gun in appellant's hand; he testified the gun was pointed directly at him. According to Officer Sanders, appellant advanced toward Sanders so he began to run backwards, drawing his weapon as he did so. Officer Sanders fired several shots as he backpedaled to the front yard. He heard Officer Powell firing also.

Appellant went down on one knee, leaning against the house. Officer Sanders turned on his weapon-mounted light, illuminating the area. He told appellant to get down. Appellant raised his handgun, and Officer Sanders fired again. Appellant then fell face down in the front yard. Officer Sanders kept cover over appellant as other officers arrived at the scene. Appellant had been shot several times and Officer Powell had been shot in the foot. After appellant was handcuffed, Officer Sanders found a gun in the grass behind appellant. The evidence showed that appellant's gun had been fired four times.

Officer Powell testified similarly, and observed that neither he nor Officer Sanders had drawn a weapon at the time the first shot was fired.

Appellant's testimony at trial differed. According to appellant, soon after he took off running from the officers, he realized that he was caught:

> As I come around, I can see that I am trapped with the fence. I reached into my pants to throw the gun over the fence. I know that was very reckless. I was scared. As I reached into my pants – I was going to throw the gun right over the fence right here.

Appellant testified that he "reached straight in [his] pants" intending to throw the gun, but the gun "went off" in his hand. He turned around to face the officers; appellant was shot through the arm and "squeezed the trigger again." Struck by more gunshots, appellant ran back toward the corner of the house. Appellant fell after he was shot in the knee. He asserted that he never pointed his gun at the police officers and that his gun discharged "on accident."

The jury was charged, on two counts, on both the offense as provided in the indictment, i.e., attempt to commit capital murder of a peace officer, and the lesser-

included offense of aggravated assault against a public servant with a deadly weapon. On both counts, the jury found appellant not guilty of attempted capital murder but found him guilty of aggravated assault against a public servant with a deadly weapon. The trial court assessed punishment on each count at forty-eight years in the Texas Department of Criminal Justice, with sentences to run concurrently. This appeal followed.

Law and Analysis

In his sole issue on appeal, appellant argues that the trial court erred by not issuing an instruction pertaining to deadly conduct as a lesser-included offense in the jury charge as he requested. We will assume, without deciding, that appellant's request for the inclusion of an instruction on deadly conduct was sufficient to preserve error. We review a trial court's refusal to include a lesser-included offense instruction in the court's charge for an abuse of discretion. *See Goad v. State*, 354 S.W.3d 443, 451-53 (Tex. Crim. App. 2011) (Alcala, J., concurring); *Brock v. State*, 295 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

When determining whether a trial court erred by denying an instruction on a lesser-included offense, we apply a two-part test. *See Bullock v. State*, 509 S.W.3d 921, 924-25 (Tex. Crim. App. 2016). First, we consider whether the requested offense is a lesser-included offense of the charged offense. *Id.* To make this determination, we compare the elements as alleged in the indictment with the elements of the potential lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). As

4

applicable to the instant case, an offense is a lesser-included offense of another if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. *Amaro v. State*, 287 S.W.3d 825, 828 (Tex. App.—Waco 2009, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006)). The elements of the lesser offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment. *Cavazos*, 382 S.W.3d at 384.

Here, appellant argues and the State concedes that the first part of the test is met. As charged in the indictment, appellant was alleged to have shot or shot at a peace officer with the specific intent to commit capital murder.[2] A person commits the offense of attempted capital murder if, with the specific intent to commit a capital murder, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. *See* TEX. PENAL CODE ANN. §§ 15.01(a) (West 2019), 19.03(a) (West Supp. 2020). A person commits capital murder of a peace officer if he intentionally or knowingly causes the death of a peace officer acting in the lawful discharge of an official duty, knowing that the person is a peace officer. *See id.* § 19.03(a)(1). A person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. *Id.* § 22.05 (West 2019).

The Court of Criminal Appeals has held that deadly conduct is a lesser-included offense of the charged offense of attempted murder and may also be a lesser-included offense of aggravated assault. *Guzman v. State*, 188 S.W.3d 185, 190 (Tex. Crim. App.

---

[2] The indictment alleged that appellant shot Officer Powell and shot at Officer Sanders.

5

2006); *Bell v. State*, 693 S.W.2d 434, 439 (Tex. Crim. App. 1985). In *Bell*, the high court found reckless conduct, the statutory predecessor to deadly conduct, to be a lesser-included offense of aggravated assault by use of a deadly weapon "because it is established by proof of the same facts required to establish the commission of aggravated assault by the use of a deadly weapon," explaining:

> Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.

*Bell*, 693 S.W.2d at 438-39 (emphasis in original).

This Court distinguished *Bell* in *Miller v. State*, a case where the indictment alleged the use *or* exhibition of a deadly weapon. 86 S.W.3d 663, 664 (Tex. App.—Amarillo 2002, pet. ref'd). Based on the indictment at issue in *Miller*, the charged offense could be proven by showing that Miller "exhibited" a deadly weapon, and therefore the statutory elements of deadly conduct would not necessarily be established by proof of the same or less than all the facts required to establish the commission of the offense charged. *Id.* at 667. We thus concluded that deadly conduct was not a lesser-included offense of aggravated assault against a public servant in that case. *Id.* In the present case, we need not revisit the question of whether a person can be placed in imminent danger of serious bodily injury by mere exhibition of a deadly weapon because the indictment at issue here alleged that appellant *used* a deadly weapon, i.e., he shot Officer Powell and shot at Officer Sanders.

6

After comparing the language in appellant's indictment for attempted capital murder of a peace officer to the elements of deadly conduct, and applying the reasoning of *Guzman* and *Bell*, we agree with the parties that deadly conduct is a lesser-included offense under the circumstances of this case. Here, the allegation that appellant shot or shot at officers with a firearm is functionally equivalent to an allegation that he engaged in conduct that placed the officers in imminent danger of serious bodily injury, as is required to establish deadly conduct.

Having determined that deadly conduct is a lesser-included offense, we proceed to the second part of the test and ask whether the evidence presented at trial to establish aggravated assault by the use of a deadly weapon established the lesser-included offense of deadly conduct. *See Campbell v. State*, 149 S.W.3d 149, 154 (Tex. Crim. App. 2004) (en banc). A defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Bullock*, 509 S.W.3d at 925; *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993) (en banc). This step is "a question of fact and is based on the evidence presented at trial." *Cavazos*, 382 S.W.3d at 383. Anything more than a scintilla of evidence may be sufficient to entitle a defendant to the requested lesser charge. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

Appellant would be entitled to a deadly conduct instruction if the record contains more than a scintilla of nonspeculative evidence that, if believed by the jury, negates or refutes an element of the offense charged while providing a rational alternative finding on

7

any associated element of the lesser offense of deadly conduct. *See Barrios v. State*, 389 S.W.3d 382, 400 (Tex. App.—Texarkana 2012, pet. ref'd).

Appellant argues that he was entitled to an instruction on the lesser offense of deadly conduct because "there was ample evidence suggestive of reckless conduct which the jury was free to believe or disbelieve." A person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. TEX. PENAL CODE ANN. § 22.05. Under the Penal Code, a "person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c) (West 2021).

Recklessness involves conscious risk creation. As the Court of Criminal Appeals has explained:

> [A]t the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct. As has often been noted, [m]ere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not suffice to constitute either culpable negligence or criminal recklessness. Recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it. Such a "devil may care" or "not giving a damn" attitude toward the risk distinguishes the culpable mental state of criminal recklessness from that of criminal negligence, which assesses blame for the failure to foresee the risk that an objectively reasonable person would have foreseen. Those who are subjectively aware of a significant danger to life and choose, without justification, to engage in actions (or in some cases inactions) that threaten to bring about that danger have made a calculated decision to gamble with other people's lives. This combination of an awareness of the magnitude of the risk and the conscious disregard for consequences is crucial. It is callous disregard of risk, and not awareness *vel non* of risk, however, which is critical. And, of course, determining whether an act or omission involves a substantial and unjustifiable risk requires an

8

examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight.

*Williams v. State*, 235 S.W.3d 742, 751-53 (Tex. Crim. App. 2007) (internal quotations omitted). "Whether a defendant's conduct involves 'an extreme degree of risk' must be determined by the conduct itself and not by the resultant harm." *Id.* at 753.

At trial, appellant testified that he was reckless by running with and attempting to discard a loaded gun. Appellant also testified that his gun did not have a hair trigger and he was not afraid that the gun would discharge accidentally. The specific act that appellant identified in his requested jury instruction as conduct that placed the officers in imminent danger of specific bodily injury was "[appellant] attempted to throw a loaded firearm over the fence."

The conduct appellant labels as recklessness was independent of and prior to the conduct alleged by the State as the basis for the charges against appellant, i.e., shooting, shooting at, or threatening to shoot the two officers. Appellant did not present evidence that in attempting to throw the gun over the fence, he handled the gun in a manner that placed others in imminent danger of serious bodily injury. Rather, appellant testified that his gun "went off" wholly by accident, first when he planned to throw it over the fence, away from the officers, and again when he was shot in the arm. Thus, as to the aiming and firing of the gun, appellant asserted that he had no culpable mental state whatsoever. Deadly conduct requires more than an accidental or involuntary discharge of the gun by appellant. *See* TEX. PENAL CODE ANN. § 22.05.

9

Appellant's testimony indicated that his ostensibly reckless behavior—running with and attempting to discard a loaded weapon—did not coincide with the actions upon which he was charged—shooting, shooting at, or threatening to shoot the officers. As such, the jury would not be able to rationally conclude that, at the time the gun fired, appellant was aware of but consciously disregarded a substantial and unjustifiable risk. *See Cavazos*, 382 S.W.3d at 385 (considering moment defendant fired shots in making determination of recklessness); *see also Cook v. State*, Nos. 03-08-00718-CR, 03-08-00719-CR, 2009 Tex. App. LEXIS 7886, at *24 (Tex. App.—Austin Oct. 9, 2009, pet. ref'd) (mem. op., not designated for publication) (insufficient evidence to show substantial risk of serious bodily injury where defendant displayed knife a few feet from complainant). Because the evidence would not support a finding that appellant had the requisite mental state at the time that he fired the gun, the trial court did not abuse its discretion by denying appellant's request for the inclusion of an instruction on deadly conduct.

## Conclusion

Having overruled appellant's sole issue on appeal, we affirm the trial court's judgment.

Judy C. Parker
Justice

Do not publish.

10